**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-2448

_____

D. C. Docket No. 5:96CV221-RH

TECHNICAL COATING APPLICATORS, INC.,

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
10/09/98
THOMAS K. KAHN
CLERK

Plaintiff-Appellee,


versus


UNITED STATES FIDELITY AND GUARANTY COMPANY,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____
(October 9, 1998)



Before BIRCH, Circuit Judge, HILL and KRAVITCH, Senior Circuit
Judges.

BIRCH, Circuit Judge:

In this insurance contract case, United States Fidelity and Guaranty Company ("USF&G") appeals the district court's conclusion that, under Florida law, an "absolute pollution exclusion" is ambiguous when applied to the emission of vapors from products used in their normal manner. For the reasons that follow, we conclude that the district court erred in holding that the absolute pollution exclusion is ambiguous under these circumstances. We therefore vacate the district court's order awarding partial summary judgment against USF&G.

## I. BACKGROUND

Plaintiff-Appellee Technical Coating Applicators ("TCA") is a roofing contractor incorporated and located in Florida. Defendant-Appellant USF&G is an insurance company incorporated in Maryland. Prior to the events underlying this lawsuit, TCA purchased two general liability insurance policies from USF&G.

In 1992, the Okaloosa County, Florida, School District hired TCA to perform repairs on the roof at the Baker School. As part of the repairs process, TCA applied polyurethane foam and several layers of elastomeric protective coatings to the roof of the school. Several months after TCA completed its repair work, school employees and students began reporting respiratory problems. Ultimately, approximately thirty employees and students filed suit against TCA, alleging that TCA negligently applied the foam and elastomeric coatings and exposed the employees and students to vapors emitted by these products.

TCA demanded that USF&G defend the lawsuits filed by the employees and students pursuant to the two general liability insurance policies issued by USF&G. Both insurance contracts contain a clause known as an "absolute pollution exclusion," which excludes from coverage:

> [any] "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

3

. . . (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

> (i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

R2-20 Ex. A at 9; Ex. B at 6. "Pollutants" are defined in the policies as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste." Id. Stating that the vapors emitted by TCA's roofing products fell within the definition of a pollutant in the absolute pollution exclusion, USF&G denied coverage and refused to defend the lawsuits. TCA then commenced this action against USF&G.

USF&G moved for summary judgment, arguing that the absolute pollution exclusion permitted USF&G to deny coverage for claims arising from the emission of vapors from the roofing products. The district judge denied USF&G's motion, reasoning

that, because Florida law governing the construction of insurance contracts resembled Georgia law in all relevant respects, the court was obliged to follow Bituminous Casualty Corporation v. Advanced Adhesive Technology, Incorporated, 73 F.3d 335 (11th Cir. 1996). In Bituminous, we found an identically-worded pollution exclusion clause to be ambiguous under Georgia law. 73 F.3d at 338. Consistent with Bituminous, the district court awarded partial summary judgment in favor of TCA with respect to USF&G's duty to defend the lawsuits against TCA. Finally, the district judge certified his ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). We agreed to review the district judge's determination that the absolute pollution exclusion is ambiguous under Florida law.

## II. ANALYSIS

The district judge's resolution of the parties' motions for summary judgment involved the construction of an insurance

contract, which is a question of law and is subject to de novo review. Elan Pharm. Research Corp. v. Employers Ins. of Wausau, 144 F.3d 1372, 1374-75 (11th Cir. 1998). Our review of a district court's grant or denial of summary judgment is plenary and we apply the same legal standards as those employed by the district court. Id. Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

In a contract action, a federal court sitting in diversity jurisdiction applies the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result. See Insurance Co. of N. Am. v. Lexow, 937 F.2d 569, 571 (11th Cir. 1991). In particular, the federal court must follow the decisions of the state's highest court when that court has addressed the relevant issue. See Brown v. Nichols, 8 F.3d 770, 773 (11th Cir. 1993). Here, the Florida Supreme Court has published an opinion that squarely addresses the issues raised by

6

this appeal, <u>Deni Associates of Florida, Incorporated v. State Farm Fire & Casualty Insurance Company</u>, 711 So.2d 1135 (Fla. 1998). Although the publication of <u>Deni</u> occurred after the district judge issued his orders awarding summary judgment in favor of TCA, "the law is settled that a federal appellate court sitting in a diversity case must apply the state law as it exists at the time of the appeal and not at the time of the district court judgment." <u>Kramer v. Piper Aircraft Corp.</u>, 868 F.2d 1538, 1541 (11th Cir. 1989). Intervening state decisions must be given full effect as if the decisions existed during the pendency of the case in district court. <u>Id.</u> Consequently, we apply the Florida Supreme Court's holding in <u>Deni</u> to this case, despite the fact that this decision was not available to the district judge.

In <u>Deni</u>, the Florida Supreme Court considered an absolute pollution exclusion that contained language identical to that used in the policies issued by USF&G. 711 So.2d at 1137. The court concluded that the language is "clear and unambiguous" and

therefore must be enforced by courts interpreting such exclusions. Id. at 1138. Consequently, the companies that issued the policies in Deni had no duty to defend the policyholders in lawsuits after the policyholders (a) spilled ammonia inside a building, releasing ammonia vapors that allegedly caused damages to people inside the building, and (b) "oversprayed" insecticide on two men standing outside the property scheduled to be sprayed. Id. at 1137-38, 1140.

Relying upon the Florida Court of Appeal's decision in Deni, the district judge reasoned that the facts of this case are distinguishable from those of Deni, thus permitting the consultation of authority from other states. Specifically, the district judge noted that the vapors underlying the lawsuits against TCA were emitted pursuant to the normal, proper application of TCA's roofing products, while Deni and other Florida decisions involved vapors or other pollutants discharged as a result of accidents or improper usage of products. The Florida Supreme Court opinion,

8

however, eliminated this distinction, extending its holding to encompass even those discharges that result from the proper, everyday use of otherwise benign products and materials. Using examples such as paint and glue, the court observed that, although these products normally do not inflict injury, the products' ability to produce an irritating effect places the products within the policies' definition of an "irritant." Deni, 711 So.2d at 1139 (quoting American States Ins. Co. v. Nethery, 79 F.3d 473, 476 (5th Cir. 1996)).[1] Consequently, a product that causes no harm when used properly still may be classified as a pollutant under the exclusion: "It can obviously cause harm when it is not used properly. Thus, the pollution exclusion . . . precludes coverage. . . ." Id. at 1141.[2]

---

[1]     Nethery, which is quoted with approval by the Deni court, contains facts that are similar to those presented in this case. In Nethery, a painting company used paint and glue inside of a home, thus using those products in their proper, everyday manner. 79 F.3d at 474. The homeowner later sued the painting company for injuries allegedly sustained from fumes released by the paint and glue. Id. Interpreting Mississippi law, the Fifth Circuit held that an absolute pollution exclusion identical to the clauses at issue in this case abrogated the insurer's duty to defend the lawsuit. Id. at 478.

[2]     The Florida Court of Appeal interpreted the absolute pollution exclusion in a similarly broad manner:

After the Florida Supreme Court published Deni, we issued West American Insurance Company v. Band & Desenberg, 138 F.3d 1428 (11th Cir. 1998), which adds further support to our decision in this case. In West American, we held that an absolute pollution exclusion identical to the exclusion at issue in this case abrogated the insurer's duty to defend claims that the insured's air conditioning system transported air-borne contaminants into the insured's office building. 138 F.3d at 1428; see also West Am Ins. Co. v. Band & Desenberg, 925 F. Supp. 758, 761 (M.D. Fla. 1996) ("[T]he language of the exclusion is clear and unambiguous. . . . The language requires only that the pollution occur at a premises owned or occupied by an insured.").

---

To repeat ourselves, the express language of this exclusion is to exclude all pollution bodily injury claims from coverage. The definition of pollution drafted by these underwriters in these cases was obviously intended to be both broad and comprehensive.... [T]he obvious meaning of the words in these categorical exclusions is that no pollution claims will be covered."

State Farm Fire & Cas. Ins. Co. v. Deni Assoc. of Florida, Inc., 678 So.2d 397, 403 (Fla. Dist. Ct. App. 1996) (emphasis added).

Consistent with these decisions, we conclude that, under Florida law, the absolute pollution exclusions contained in the policies issued by USF&G unambiguously excluded coverage for bodily injuries sustained by breathing vapors emitted from TCA's roofing products, regardless of whether TCA used the products properly or negligently.  Contrary to arguments posed by TCA, our construction of the absolute pollution exclusion does not nullify the essential coverage provided by the policies; rather, the policies continue to provide coverage for a wide variety of accidents and mishaps--such as injuries from falling equipment--that may occur during the roof repair process.

TCA argues that, even if we conclude that the absolute pollution exception is unambiguous and enforceable, we nonetheless should affirm the district judge's ruling because the absolute pollution exception applies only if the discharge of pollutants occurs while the insured is "performing operations." The district judge, however, did not consider this argument

11

because his conclusion regarding the ambiguity of the absolute pollution exclusion eliminated the need to decide whether the discharge occurred while TCA was performing operations.  We therefore decline to consider this argument on appeal, so that the district judge may have an opportunity to address the argument in the first instance.  Citro Florida, Inc. v. Citrovale, S.A., 760 F.2d 1231, 1232 (11th Cir. 1985) ("We . . . decline to reach the merits of an issue on which the district court has not ruled.") (citation and internal quotation omitted).[3]

## III.  CONCLUSION

For the foregoing reasons, we conclude that the absolute pollution exclusion is not ambiguous under the circumstances of this case.  We therefore VACATE the district judge's entry of

---

[3]      In a supplemental brief, TCA also argues that the district judge's ruling should be affirmed because USF&G failed to provide TCA with adequate notice of amendments to the absolute pollution exclusions.  Because this contention is raised for the first time on appeal, we decline to consider this argument as well.

summary judgment in TCA's favor and REMAND the case to the district court.